## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

CAROL THOMPSON-WHITE,

        Plaintiff,

v.                                        Civ. No. 04-0077 JP/LFG

VILLAGE OF ANGEL FIRE, NEW MEXICO;
A.L. CLANTON, Mayor and Village Council Member,
in his individual and official capacities;
JOHN D. HARRISON, in his individual and official capacities;
CHUCK HASFORD, Mayor Pro-Tem and Village Council
Member, in his individual and official capacities;
BONNIE BRASHEAR, Village Council Member,
in her individual and official capacities;
WILLIAM "HOOT" GIBSON, Village Council Member,
in his individual and official capacities;
RICHARD HILL, Village Council Member,
in his individual and official capacities;
DOE DEFENDANTS 1 THROUGH 5,

        Defendants.

## MEMORANDUM OPINION AND ORDER

      Plaintiff Carol Thompson-White filed suit against her former employer, the Defendant

Village of Angel Fire, New Mexico, and six individual Defendants, after Defendants terminated

Plaintiff's employment.  Plaintiff alleges a deprivation of procedural due process (Count I), denial

of equal protection (Count II), a deprivation of substantive due process (Count III), a deprivation

of a liberty interest in reputation (Count IV), and a claim for common law bad faith breach of

contract (Count V[1]).  On June 23, 2004, the six individual Defendants (the Mayor, the Village

Administrator, and four members of the Village Council) filed a Motion to Dismiss or for

Summary Judgment Based on Qualified Immunity (Doc. 14).  After a careful review of the law,

---

[1]  This count is erroneously designated as "Count IV" in the Amended Complaint, ¶¶ 41-43.

briefs and admissible evidence, I conclude that the individual Defendants' motion should be granted.

## I. FACTUAL BACKGROUND

The facts set forth below either are not in dispute or are viewed in a light most favorable to Plaintiff, the non-movant. Defendant Village of Angel Fire ("Village") employed Plaintiff as the Village Finance Director from April 26, 1999 through May 2, 2003. Aff. Harrison ¶2. Plaintiff's responsibilities included accounting, budget development, investments, and an annual fiscal audit for the Village. Def. Ex. 1. Plaintiff reported to Defendant Village Administrator Harrison. Def. Ex. 1. The events that gave rise to this lawsuit began on April 22, 2003, when Village Administrator Harrison hand-delivered to Plaintiff a notice of proposed termination and notice of a pre-termination hearing scheduled for April 25, 2003. Def. Ex. 2.

### A. Pre-termination Hearing

The Village of Angel Fire Code ("Village Code") has three provisions relating to pre-termination procedure.[2] Part A requires that, "Prior to any involuntary termination of employment, demotion, or suspension, the affected employee will receive written notice of proposed action, which shall include a statement of the reasons for such action and provide the affected employee with the opportunity to rebut such reasons." Def. Ex. 3, Village Code, § 2-10-6(A) (2000). Part B states, "The affected employee will thereafter have the right and opportunity to respond in writing to the proposed action and the reasons therefor, and to respond orally to such matters before the person having responsibility for making the decision." Id., § 2-10-6(B). Finally, Part C dictates that, "Following completion of the predetermination hearing and

_____

[2]The Village Code uses the term "predetermination," which is synonymous with "pre-termination."

concurrence of the administrator for adherence to due process, the person responsible for the

decision will notify the affected employee in writing of the decision." Id., § 2-10-6(C).

Village Administrator Harrison served as both the administrator and the person responsible for

making the decision regarding Plaintiff's termination.

In accordance with Part A, which requires that the employee receive notice, Village

Administrator Harrison hand-delivered to Plaintiff the April 22, 2003 letter which set forth several

grounds for the proposed termination:

> 1.  . . . Violation of Law:  Your failure to timely remit employee withholdings to
> both the federal and state governments, which placed the Village in violation of
> law and subject to seizure of the Village's accounts by the IRS, notwithstanding
> numerous warnings and requests for compliance.

> 2.  . . .  Fraud; and/or . . . Misconduct.  Certain interest and penalties were, in fact,
> assessed and imposed due to your tardy filings and submissions.  Payments for
> such interest and penalties were, however, classified in journal and other entries as
> 'office supplies.'  Interest and penalties are not office supplies and were, of course,
> misclassified as such.  These misclassifications seem to reflect that they were made
> to avoid detection of the tardy filings and submissions or 'cover-up' the fact that
> interest and penalties were imposed.  Such misclassifications may constitute fraud
> or misconduct pursuant to the Angel Fire Code, yet in any event were breaches of
> the performance expected of the Director of Finance so as to constitute a serious
> offense.

> 3.  Improper Work Performance . . .

> A.  Your failure to perform account reconciliations of the Village's bank accounts
> for a period of at least twelve months.

> B.  Your failure to perform implementation of even fifty percent (50%) of the
> software modules acquired at your recommendation with the result that the Village
> has not and is not maximizing its investment in the acquired software and has not
> and is not capable of integrating its financial accounting functions.  Compliance
> with GASB No. 34 will be jeopardized if the Village is unable to activate its
> account receivables and the fixed assets management modules, the further impact
> of which could jeopardize the Village's grant funds.

     C.  Your failure to properly maintain a sound investment program resulting in a loss of investment income.

     D.  Your failure to perform competently with respect to fiscal accountings and records necessary to maintain trust in and integrity of the Village's financial systems as well as failure to properly utilize Village staff in that duplication of efforts and resources have been expended to correct your errors, which include having accounts payable drawn on improper checks or accounts; incorrect posting of transactions and journal entries, misclassifications and system entry errors.

Aff. Harrison ¶4; Def. Ex. 2.

     In accordance with Part B, which requires that the employee have an opportunity to respond, Village Administrator Harrison met with Plaintiff on April 25, 2003.   An observer also attended the meeting, which was taped and transcribed.  Def. Ex. 4.  Village Administrator Harrison invited Plaintiff to speak and Plaintiff responded orally to each ground for the proposed termination.  Def. Ex. 4; Aff. Harrison ¶7.  After Plaintiff spoke, Village Administrator Harrison invited Plaintiff to make a written record and the following exchange took place:

     John Harrison: Okay, do you have any documentation that you wish to submit to support your verbal comments?
     Carol Thompson-White: I was not informed that I needed to bring documentation and I have not provided any.
     John Harrison: It is your option if you would like to.
     Carol Thompson-White: I do have copies of the two memos that I have written to you regarding the issues that I feel were issues of public concerns.  Mr. Lusk does stand by and [is] prepared to address any issues that you would like to talk to him about.

Def. Ex. 4 at 3.

     Angel Fire Village Code does not require an employee to present written material to defend against accusations.  However, both the Angel Fire Village Code § 2-10-6(B) and the April 22, 2003 notice letter to Plaintiff informed her that she would have the opportunity to respond.  Def. Exs. 2, 3.  The April 22, 2003 letter says the response can be made "orally or in

4

writing," and the Code says orally "and" in writing.  Def. Exs. 2, 3.  Toward the conclusion of the pre-termination hearing, Village Administrator Harrison reminded Plaintiff of the personnel manual and the grievance procedure.  He noted that if the matter ended up in the hands of the Village Council and Plaintiff needed further clarification, "we will certainly provide it to you." Def. Ex. 4 at 4.  Plaintiff did not request a delay in the pre-termination hearing, she did not request that her attorney be permitted to attend the hearing, and she did not request that she be permitted to present witnesses or cross-examine witnesses.  Aff. Harrison ¶7.

In accordance with Part C, which requires that the employee be notified in writing of the decision, Village Administrator Harrison sent Plaintiff and her attorney a termination letter dated May 1, 2003.  Harrison wrote in the letter, "In addition to the information provided by you, I made further inquires to verify dates, records and incidents."  Def. Ex. 5 at 1.  In particular, Village Administrator Harrison investigated a memorandum Plaintiff supplied at the pre-termination hearing.  Harrison found that Plaintiff had violated the directive in the memorandum regarding changing passwords in the computer system and Plaintiff had not informed the proper person when she changed her password, contrary to what Plaintiff represented at the pre-termination hearing.  Def. Ex. 5.  Village Administrator Harrison said that the password change was not a basis for Plaintiff's termination.  Def. Ex. 5.  Village Administrator Harrison did find that all of the offenses described in the April 22, 2003 notice letter occurred.  Def. Ex. 5.  He noted that he accepted Plaintiff's explanation in regard to offenses 3.B (failure to implement software) and 3.C (failure to maintain a sound investment program) but still found that those offenses occurred.  Def. Ex. 5.  The letter did not state whether Harrison's finding that those offenses occurred despite his accepting Plaintiff's explanation meant that Harrison believed the

offenses were still grounds for Plaintiff's termination, or as he had done with the changed

computer passwords incident, Harrison was no longer relying upon them as grounds for the

termination.  In viewing the facts in a light most favorable to Plaintiff, I will assume that Village

Administrator Harrison relied upon offenses 3.B and 3.C in reaching his decision that Plaintiff

should be terminated.

### B.  Plaintiff's Grievance

The termination letter to Plaintiff closed by stating, "The Village's Grievance Policy is

applicable to this disciplinary action."  Def. Ex. 5.  The grievance policy provides that an

employee "may request a review within ten (10) days to the village council of any action taken by

the administration of the village pertaining to his/her employment."  Village Code § 2-11-1(C);

Def. Ex. 6.   The Village Code established the following procedure for review by the Village

Council:

> A.  When deliberating on a grievance, the village council shall not hear any presentations or evidence aside from the record, findings and recommendations of the village administrator.
>
> B.  As soon as possible after the village council has received the recommendations, it shall act; such action shall normally be within thirty (30) days of transmittal of the village administrator's report.
> . . .
> E.  In acting, the council may take one of the following actions:
>     1.  Accept or reverse the village administrator's or designee's decision; or
>     2.  Modify the village administrator's or designee's decision; or
>     3.  Remand the matter to the village administrator for further hearing or a more detailed report.
>
> F.  The decision of the village council shall be the final step in the administrative process provided for by this title.

Def. Ex. 6; Village Code § 2-11-2.

Plaintiff retained legal counsel by April 30, 2003 and Plaintiff's counsel began communicating with the Village's legal counsel.  Plaintiff's legal counsel questioned the constitutional sufficiency of the Village's personnel policy in a letter faxed to counsel for the Village on April 30, 2003.

> I did not mean to suggest that the Village would not at least minimally adhere to the standards set forth in its current personnel policies.  I *did* mean to inquire whether that is *all* the due process that the Village intends to accord my client. . . . the Village can certainly allow more process if it wants to. . . .  If the Village intends to provide no more process than what [is] presently spelled out, and if you will confirm in writing that the Village intends to do no *more* than that, then we can probably skip futile formalities and go straight to a § 1983 action.  If, on the other hand, the Village is willing to cooperate in good faith to work out a more meaningful process than what is currently spelled out, then I would be happy to cooperate in any such effort.

Pl. Ex. 1 (emphases in original).  After the termination decision was communicated to Plaintiff on May 1, 2003, Village counsel responded with a May 2, 2003 letter to Plaintiff's counsel.

> It is impossible to know what further due process your client feels would be helpful to her or that you argue she is entitled to; and even more so, what it is that you want for your client. . . .  In response to your unspecified request for 'more due process,' I suspect the Village Council will hold any filing subject to the ten-day requirement set forth in the Grievance Procedure.  The only specific you mentioned during our phone conversation, although you do not confirm it in your letter, went to the presentation of evidence and a 'de novo' hearing.  I do not know what action the Village Council would take in response to a request for a hearing of the type you reference; and further I do not know how such a hearing would be different from one held either pursuant to Angel Fire Code, Title 2, Chapter 11, Section 2(A) or (E)(3).[3]  I suggest that you make a request, if you so desire, and then the Village, I assume with counsel's advice, would respond.

Pl. Ex. 2.

---

[3]  Title 2, Chapter 11, Section 2(A) and (E)(3) are referred to herein as §§ 2-11-2(A) and (E)(3).  They are contained in Def. Ex. 6.  Section 2(A) provides that the Village Council "shall not hear any presentations or evidence aside from the record, findings and recommendations of the village administrator."  Section 2(E)(3) allows the Village Council to remand to the village administrator for further hearing or a more detailed report.

On May 9, 2003, Plaintiff availed herself of the policy by filing an Employee Grievance Form in which she claimed an "illegal and unwarranted termination."  Def. Ex. 7.  Plaintiff provided no details.  On May 12, 2003, Plaintiff's counsel wrote to Village counsel to request a one-month delay in the Village Council's appeal hearing "in the hope that you and I and the Village could collaborate in an effort to explore the due process issues raised in my previous fax." Pl. Ex. 3.  Village counsel honored this request for a delay by scheduling Plaintiff's termination grievance for the Village Council's June 19, 2003 meeting and sent a memorandum dated May 13, 2003 to Plaintiff's counsel.  Pl. Ex. 4.  The memorandum also addressed the submission of written material to the Village Council.

> If you like, you may submit to the Village Clerk for the Village of Angel Fire, on or before June 11, 2003, any written documentation or comments on behalf of your client related to the matter of her termination. . . .  Know that this accommodation for late submission of written documentation is just a courtesy and nothing more or other than a courtesy. . . .  Any written documentation and comments submitted will be included with the record of this matter in the packets provided by the clerk on June 11, 2003 to the Village Council prior to its regularly scheduled meeting.

Pl. Ex. 4.

On  June 11, 2003, Plaintiff's counsel wrote to the Village counsel, stating, "we do not agree that the procedure made available to my client comports with the requirements of the U.S. Constitution.  She was not afforded, and is still not being afforded, constitutionally meaningful notice and an opportunity to be heard."  Pl. Ex. 5.  Plaintiff's counsel expressed concern that the Village Council would review a "dossier of additional material" intended to prejudice Plaintiff.  Pl. Ex. 5.  Plaintiff's counsel declined to submit additional written material, noting that the opportunity for Plaintiff to provide her written material was a "sham" because (1) Plaintiff did not

have access to Village records and (2) Plaintiff would not have an opportunity to respond to the

Village's new material.  Plaintiff's memorandum then states:

> In view of the foregoing, we decline to ratify this proceeding by accepting your
> offer to provide additional written material for the Council's consideration, and I
> will be present on June 19 to place our objection to this process on the record, if
> the Council deigns to allow me to speak.

Pl. Ex. 5.

Village counsel responded the same day to deny that any additional material would be

presented by Harrison to the Village Council and to confirm that Plaintiff and her attorney could

be present when the Village Council addressed her grievance.  The letter explained that the

Village Council meeting would not be "a *de novo* hearing and under Village of Angel Fire Code,

Section 2-11-2A 'the Council shall not hear any presentations or evidence aside from the record,

findings and recommendation of the Village Administrator.'"  Pl. Ex. 6.

### C.  The Post-termination Hearing

In anticipation of the June 19, 2003 Village Council meeting which served as Plaintiff's

post-termination hearing, Village Administrator Harrison submitted information to the Village

Council as required by the Village Code, § 2-11-2(A).  Harrison provided a memorandum dated

June 13, 2003 to the Council, but apparently not to Plaintiff or her attorney, which listed six

attachments:  (1) a copy of the proposed termination and notice of the pre-termination hearing

dated April 22, 2003;  (2) copies of supporting documentation regarding grounds for termination

1 and 2; (3) a copy of the projection of loss of earnings for failure to maintain a sound investment

program to support ground for termination 3.C; (4) a copy of the transcript of the pre-termination

hearing held April 25, 2003; (5) a copy of the memorandum issued by Plaintiff regarding the

9

changing of the computer passwords and given to Harrison by Plaintiff during the pre-termination hearing; and (6) a copy of the May 1, 2003 letter notifying Plaintiff of her termination.

It appears that Plaintiff was not given attachments (2) two and(3) three (the documentation regarding grounds 1, 2, and 3.C) before the Village Council meeting.  Plaintiff had discussed grounds 1, 2, and 3.C in her pre-termination hearing with Village Administrator Harrison.  Def. Ex. 4.   In regard to ground 1, the failure to timely remit employee withholdings to federal and state governments,  Plaintiff did not address whether this occurred but did note that she did not violate the law.  In regard to ground 2, tax penalties assessed and misclassified as office supplies, Plaintiff admitted that this occurred, said it was common knowledge, and said that she had been reprimanded at the time.  In regard to ground 3.C, Plaintiff addressed this and seemed to admit that it occurred, but offered reasons why it happened.

Harrison noted that attachment five (5) to his June 13, 2003 memorandum was not used as a reason for termination, but he apparently included it in the packet because it was discussed at the pre-termination hearing.  Plaintiff did not submit any information to the Village Council, although prior to the Council meeting the attorney for the Village advised Plaintiff's attorney that, "Any written documentation and comments submitted will be included with the record of this matter in the packets provided by the clerk . . .  to the Village Council prior to its regularly scheduled meeting."  Pl. Ex. 4.

The Village Code does not mention the right to have counsel present at a post-termination proceeding.  However, Plaintiff's counsel made his intent to attend the Village Council meeting known to counsel for the Village, who approved his attendance.  Def. Ex. 10, Pl. Ex. 6.  Nevertheless, Plaintiff's counsel did not attend the June 19, 2003 post-termination proceeding;

but Plaintiff did attend.  Aff. Harrison ¶16.[4]  Plaintiff did not ask to speak at the post-termination

hearing.  Aff. Harrison ¶16.

The Village Code does not allow for presentation of new evidence at a post-termination

hearing.  "When deliberating on a grievance, the village council shall not hear any presentations or

evidence aside from the record, findings and recommendations of the village administrator."  Def.

Ex. 6, Angel Fire Code § 2-11-2(A).  After considering the complete record at the post-

termination hearing, the Village Council has three options.  It may:

    1.  Accept or reverse the village administrator's or designee's decision; or
    2.  Modify the village administrator's or designee's decision; or
    3.  Remand the matter to the village administrator for further hearing or a more
        detailed report.

Def. Ex. 6, Village Code §2-11-2(E)(3).  Plaintiff did not request remand to the Village

Administrator for further hearing or a more detailed report.  Aff. Harrison ¶16.  The Village

Council affirmed Village Administrator Harrison's decision to terminate Plaintiff's employment.

Aff. Harrison ¶17.

### D.  Issues Regarding Liberty Interest Claim

After termination, Plaintiff sought other employment, in particular with Taos County.

Plaintiff alleges that an unidentified individual Defendant told an unidentified Taos County

Commissioner that the real reason underlying Plaintiff's termination was Plaintiff's embezzlement.

Am. Compl. ¶38.  Plaintiff avers that similar false statements were made to other prospective

employers and that such statements foreclosed or restricted Plaintiff's future employment

opportunities.  Am. Compl. ¶39.

---

[4]Defendants' statement of undisputed material fact ¶14 says that Plaintiff did not appear.  This conflicting
information is not material.

## II.  STANDARD OF REVIEW

As an initial matter, the Court must determine whether to consider Defendants' motion as a Rule 12(b)(6) motion to dismiss or a Rule 56 motion for summary judgment.  A court must treat a Rule 12(b)(6) motion to dismiss as a motion for summary judgment whenever the court considers matters outside the plaintiff's complaint.  See Lowe v. Town of Fairland, 143 F.3d 1378, 1381 (10th Cir. 1998) ("A motion to dismiss for failure to state a claim . . . must be converted into a motion for summary judgment whenever the district court considers matters outside the pleadings.")  However, in converting a motion to dismiss into a motion for summary judgment, a court must give the parties notice of the changed status of the motion and provide the parties with an opportunity to present all material pertinent to the motion for summary judgment. Fed R. Civ. P. 12(b); Brown v. Zavaras, 63 F.3d 967, 969 (10th Cir. 1995).

Here, Defendants' filed their motion as either a Rule 12(b)(6) motion to dismiss or a Rule 56 motion for summary judgment.  Def. Mot. (Doc. No. 14).  Accordingly, all parties were on notice that the Court may consider Defendants' motion as a motion for summary judgment. Therefore, the Court is not required to give the parties additional notice before treating Defendants' motion as a motion for summary judgment.  Wheeler v. Hurdman, 825 F.2d 257, 259-60 (10th Cir. 1987) (court not required to provide additional notice before treating motion to dismiss as a motion for summary judgment when both parties submit materials beyond the pleadings in support of their briefs).

Resolution of the legal issues presented in Counts I and III, Plaintiff's deprivation of procedural and substantive due process claims, requires the Court to consider factual matters outside the pleadings, including an affidavit and numerous exhibits.  Therefore, the Court will

construe Defendants' motion as a motion for summary judgment under Rule 56 as to the procedural and substantive due process claims.  See Lowe, 143 F.3d at 1381.  The issues raised by Counts II and IV, claims alleging denial of equal protection and deprivation of liberty interest in reputation, can be decided on the pleadings alone.  The Court will consider Defendants' motion as a Rule 12(b)(6) motion to dismiss in regard to those claims.

### A.        Summary Judgment Standard

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  When applying this standard, the Court examines the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment.  Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990).  The moving party bears the initial burden of showing the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  Only then does the burden shift to the non-movant to come forward with evidence showing that there is a genuine issue of material fact.  Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991).  An issue of material fact is genuine if a reasonable jury could return a verdict for the non-movant.  Kaul v. Stephan, 83 F.3d 1208, 1212 (10th Cir. 1996).  The non-moving party may not avoid summary judgment by resting upon the mere allegations or denials of the non-movant's pleadings. Bacchus, 939 F.2d at 891.  To withstand a motion for summary judgment, the non-movant must make specific reference to admissible evidence in the record.  Gross v. Burggraf Constr. Co., 53 F.3d 1531, 1546 (10th Cir. 1995).  Unsubstantiated allegations, no matter how true they might be, cannot be considered.  Id.

**B.      Motion to Dismiss Standard**

The Supreme Court has stated that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also Swanson v. Bixler, 750 F.2d 810, 813 (10th Cir. 1984).   In considering a Rule 12(b)(6) motion to dismiss, a court must liberally construe the pleadings, accept as true all factual allegations in the complaint, and draw all reasonable inferences in the plaintiff's favor. Warth v. Seldin, 422 U.S. 490, 501 (1975); Dill v. City of Edmond, 155 F.3d 1193, 1203 (10th Cir. 1998). The court's function in ruling on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted. Miller v. Glanz, 948 F.2d 1562, 1565 (10th Cir. 1991). "[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991). In assessing a motion to dismiss, a court will not look beyond the four corners of the complaint. Jojola v. Chavez, 55 F.3d 488, 494 (10th Cir. 1995).

**III.  DISCUSSION**

**A.      Procedural Due Process (Count I)**

 Defendants assert that the individual Defendants are entitled to qualified immunity in their individual capacities on Plaintiff's procedural due process claim under § 1983.  This claim will be adjudicated using a summary judgment standard because the Court has considered material outside the pleading in the Amended Complaint.

Under Supreme Court qualified immunity analysis, "government officials performing

discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The individual Defendants, unlike the institutional Defendant Angel Fire Village, are entitled to the defense of qualified immunity. Hafer v. Melo, 502 U.S. 21, 25 (1991) ("officials sued in their personal capacities, unlike those sued in their official capacities, may assert personal immunity defenses. . . "). Plaintiff sued the individual Defendants in both their individual and official capacities. Am. Compl. ¶¶6-8. The claims against the individual Defendants in their official capacities are the same as the claims against the governmental entity Angel Fire Village. See Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989).

In resolving whether a defendant has established the defense of qualified immunity, a court must first consider whether, viewed in a light most favorable to the plaintiff, the facts alleged show the official's conduct violated a constitutional right. Saucier v. Katz, 533 U.S. 194, 201 (2001). If the court finds that the plaintiff has demonstrated violation of a constitutional right, then the court must determine whether that right was "clearly established" at the time of the alleged violation. Id.

The Court concludes that it is unclear whether Defendants' procedures violated Plaintiff's Fourteenth Amendment due process rights, but it is clear that even if a constitutional violation occurred, the constitutional right was not so clearly established that the individual Defendants should be deprived of qualified immunity.

The United States Constitution's Fourteenth Amendment Due Process clause provides that no state will "deprive any person of life, liberty, or property, without due process of law. . . "

Defendants agree that Plaintiff had a protected property interest in her continued employment with the Village because she could not be discharged without cause.  Def. Mem. at 6-7; See Board of Regents v. Roth, 408 U.S. 564, 576-578 (1972).  Plaintiff alleged in her Amended Complaint that, "the Village failed to provide her with full notice of all charges and adverse matters that could be taken into account, and/or with fair and impartial pre-termination and post-termination matters."  Am. Compl. ¶30.  However, Plaintiff's brief in response to Defendants' motion for summary judgment did not directly address this allegation.  Plaintiff did not provide evidence or argue in her brief that she did not receive full notice of all charges and adverse matters that could be taken into account prior to her pre-termination hearing, nor did Plaintiff present evidence about or contest the impartiality of decision makers at the pre-termination or post-termination hearings.  Plaintiff's argument seems to be that the Village did not provide Plaintiff with some of the documentation supporting the charges against her that was to be considered by the Village Council at the post-termination hearing.  Additionally, Plaintiff's brief suggests that the Village process used to terminate her employment was constitutionally deficient because the Village Code says nothing about the right to have counsel present at a hearing or the right to cross-examine witnesses.  Pl. Mem. at 3.  Defendants maintain that the Village procedures provided Plaintiff with all the process that she was due.  Def. Mem. at 10.

    In evaluating a particular procedure's compliance with due process, the three-part Mathews v. Eldridge test is employed:

> First, the private interest that will be affected by official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement

16

would entail.

424 U.S. 319, 335 (1976) (case concerned termination of social security disability benefits).  First, the parties agree that Plaintiff has a protected property interest in her continued employment, which is significant.  Second, the risk of erroneous deprivation is not great because of the multi-step, multi-decisionmaker  procedures used.  The Village's written procedure provides for Plaintiff to tell her side of the story orally and in writing at the pre-termination hearing with the Village Administrator, in writing at the post-termination hearing in front of the Village Council, and orally and in writing upon remand, if that occurs.  Plaintiff argues that other potential procedural safeguards, the explicit right to have counsel attend hearings and the explicit right to cross-examine witnesses, would have had probable value in reducing the risk of erroneous deprivation in this case.  Third, the government has an interest in making an employment decision and returning to the business of governing.  To do more than give a written notice of charges, hold a pre-termination hearing with a taped and transcribed record, establish a formal grievance procedure, provide a post-termination hearing with a written record, and afford the opportunity to remand for further hearing, arguably could be burdensome on the Village.

The Tenth Circuit applied the Mathews test in Benavidez v. City of Albuquerque, 101 F.3d 620 (10th Cir. 1996) to determine the adequacy of the City's employment termination procedures.  The city employees in Benavidez received notice of the allegations against them, the opportunity to respond orally or in writing, the option to be represented by counsel, and notice of the possibility of termination.  Benavidez, 101 F.3d at 623.  The city workers were terminated and proceeded to "full post-termination evidentiary hearings" held by the City, at which their

terminations were upheld.  Benavidez, 101 F.3d at 623.

In affirming the decision in Benavidez that the City satisfied the requirements of procedural due process when terminating city employees who had a protected property interest in continued employment the Tenth Circuit wrote,

> When the pre-termination process offers little or no opportunity for the employee to present his side of the case, the procedures in the post-termination hearing become much more important. . .  In contrast, when the employee has had a meaningful opportunity to explain his position and challenge his dismissal in pre-termination proceedings, the importance of the procedures in the post-termination hearing is not as great.  In this type of post-termination hearing, simply giving the employee 'some opportunity' to present his side of the case 'will provide a meaningful hedge against erroneous action.'

Benavidez, 101 F.3d at 626.

In determining the constitutional sufficiency of due process in post-termination procedures, it is appropriate to view the pre-termination and post-termination proceedings in light of each other.  Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 547 (1985).  Keeping in mind the interplay between the pre-termination and post-termination hearings in deciding if Plaintiff has been afforded constitutionally sufficient due process in the aggregate, I consider the pre-termination and post-termination procedures in turn because that is how the Village Code presents the procedures and how relevant case law analyzes the issue.

### 1.    Pre-termination Hearing

In discussing what constitutes adequate procedural due process prior to discharging an employee with a property interest in employment, the United States Supreme Court stated that an "essential principle of due process [is] that a deprivation of property be preceded by notice and opportunity for hearing appropriate to the nature of the case."  Cleveland Bd. of Educ. v.

18

Loudermill, 470 U.S. 532, 542 (1985). A brief, face-to-face meeting with a supervisor can satisfy the pre-termination due process requirements of Loudermill, provided that the employee is afforded some notice of the grounds for termination and opportunity to contest those grounds. See Powell v. Mikulecky, 891 F. 2d 1454, 1458-59 (10th Cir. 1989) (employee entitled to pre-termination notice of charges against him, explanation of employer's evidence, and opportunity to present employee's side of story); Seibert v. Univ. of Oklahoma Health Sciences Ctr., 867 F. 2d 591, 599 (10th Cir. 1989) (employee knew reasons for termination and was given opportunity to present employee's side of story) (abrogated on other ground by Federal Lands Legal Consortium v. United States, 195 F.3d 1190 (10th Cir. 1999)).

Defendants satisfied the notice element by hand-delivering to Plaintiff the April 22, 2003 letter, which delineated the charges in detail, three days prior to the pre-termination hearing. Def. Ex. 2. Defendants also satisfied the requirement of affording Plaintiff an opportunity to be heard at the pre-termination proceeding. The letter advising Plaintiff of the pre-termination hearing and the transcript of the proceeding clearly indicate that Village Administrator Harrison gave Plaintiff the opportunity to respond to the charges against her orally and in writing. Def. Ex. 2, Def. Ex. 4. Additionally, Plaintiff knew the reasons for her termination because the April 22, 2003 letter enumerated and explained the offenses. Def. Ex. 2. In Loudermill, the United States Supreme Court wrote, "the pretermination 'hearing,' though necessary, need not be elaborate." Loudermill at 545. In this case, the Village of Angel Fire went beyond the constitutional requirements of notice and an opportunity to be heard pre-termination. The Village put all communication and decisions in writing, provided an observer at the pre-termination hearing, and then tape-recorded

and transcribed the record of the pre-termination hearing.

Thus, the pre-termination hearing satisfied specific requirements discussed above and general constitutional requirements under Mathews.  First, the Village respected the significant employment interest involved.  Second, the Village used some safeguards against erroneous deprivation of Plaintiff's property interest in continued employment.  Third, there may have been a burden on the government in affording additional safeguards.

### 2.        Post-termination Hearing

The crux of Plaintiff's procedural due process claim at the post-termination hearing stage seems to be that 1) after the pre-termination hearing, Village Administrator Harrison forwarded supporting documentation regarding offenses 1, 2, and 3.C to the Village Council, 2) the Village Code is silent regarding the right to have counsel present, and 3) the Village Code is silent regarding the right to an adversarial hearing, specifically the right to cross-examine witnesses at either the pre-termination or the post-termination hearings.  Pl. Memo. at 2-6.

### a.        Supporting Documentation

The Village Administrator sent Plaintiff a letter detailing the charges against her prior to the pre-termination hearing and sent Plaintiff a letter outlining his findings regarding those charges, so Plaintiff was well aware of the offenses to be considered by the Village Council.  Plaintiff's response on the record to these offenses was forwarded to the Village Council.  Even though Plaintiff learned of the alleged "dossier of additional material," that would be forwarded to the Council, Plaintiff never requested a copy.  Pl. Ex. 5.  Both the plaintiffs in Benavidez, 101 F.3d at 625, and West, 967 F.2d at 369, alleged ex parte communications that prejudiced them.

20

The Tenth Circuit declined to consider the issue in <u>Benavidez</u> and in <u>West</u> rejected plaintiff's argument because the record did not support plaintiff's claim.  Here, Plaintiff has not alleged nor has she shown that the supporting documentation had any effect on the Council's decision.

### b.       Right to Counsel

The right to representation by counsel is not expressly stated in the Village Code, but in this case it was not denied.  Plaintiff's counsel knew about the post-termination hearing and made known his intention to attend the hearing.  Pl. Ex. 5.  Counsel for the Village confirmed his right to attend.  For reasons not explained by Plaintiff,  Plaintiff's counsel did not appear at the Village Council hearing.  Pl. Ex. 6; Harrison Aff. ¶16.

### c.       Right to Cross-Examination

The remaining issue is the alleged lack of an adversarial hearing, particularly the Village Code's silence regarding cross-examining witnesses.  Plaintiff does not clearly state in the Amended Complaint or in her response brief that cross-examination is what Plaintiff wanted at the time.  The communication prior to the post-termination hearing does not contain a request for cross-examination of witnesses.  Plaintiff's Amended Complaint ¶30 states, "In firing Plaintiff. . . the Village failed to provide her with full notice of all charges and adverse matters that could be taken into account, and/or with fair and impartial pre-termination and post-termination hearings." The Amended Complaint is not any more specific than that.  Plaintiff's response brief also does not state that Plaintiff wanted to cross-examine witnesses; instead it says no "existing provision permits representation by counsel, cross-examination of witnesses. . . " Resp. at 3.  In viewing the motion in a light most favorable to Plaintiff, I infer that cross-examination is what Plaintiff claims

she was entitled to, because cross-examination is the most likely legally cognizable issue.

To determine whether Defendants violated Plaintiff's right to procedural due process by not explicitly offering witness cross-examination before terminating her employment, several issues require consideration.  First, does existing legal authority provide that Plaintiff has a right to full-blown post-termination hearing with cross-examination?  Second, did Defendant have an obligation to notify Plaintiff of a right to cross-examine witnesses?  Third, did Plaintiff waive the right to cross-examine witnesses by not asking to do so?

First, is Plaintiff entitled to full-blown post-termination hearing with cross-examination when her pre-termination hearing satisfied and went beyond the requirements of a <u>Loudermill</u> hearing?  The Court of Appeals for the Tenth Circuit has not answered this definitively.  Plaintiff is entitled to a post-termination hearing, which she received on June 19, 2003 in the form of a Village Council meeting at which the Council deliberated her grievance.  However, Plaintiff contends she is entitled to a fuller post-termination hearing with cross-examination of witnesses. Presently, this is not the established law in the Tenth Circuit.  "[W]hen the employee has had a meaningful opportunity to explain his position and challenge his dismissal in pre-termination proceedings, the importance of the procedures in the post-termination hearing is not as great.   In this type of post-termination hearing, simply giving the employee 'some opportunity' to present his side of the case 'will provide a meaningful hedge against erroneous action.'" <u>Benavidez</u>, 101 F.3d at 626, quoting <u>Loudermill,</u> 470 U.S. at 543.  **"Had the City's pre-termination procedures been cursory and informal, Plaintiffs would have a stronger argument in favor of requiring the City to bear the burden of proof in the post-termination hearings".  <u>Benavidez</u>, 101 F.3d at 627.**

Plaintiff's argument for a full-blown post-termination hearing including cross-examination is not particularly strong because the pre-termination procedures provided to her were thorough and formal.  Plaintiff received a written letter stating the grounds for her termination three days in advance of a pre-termination hearing, an observer was present at the pre-termination hearing at which Village Administrator invited Plaintiff to respond to charges against her, the pre-termination hearing was recorded and transcribed, Village Administrator Harrison advised Plaintiff of her appellate rights under the Village Code in the letter he sent Plaintiff after the pre-termination hearing, and Harrison orally advised Plaintiff of her rights to appeal at the pre-termination hearing.  Def. Ex. 2; Def. Ex. 4; Def. Ex. 5.  Plaintiff has not made a strong showing that a full post-termination hearing was necessary to provide a meaningful hedge against erroneous deprivation.  In Calhoun v. Gaines, 982 F.2d 1470, 1476 (10th Cir. 1992) the court held that a terminated public employee was entitled to post-termination hearing because the pre-termination hearing was constitutionally insufficient.  Here, Plaintiff's pre-termination hearing was constitutionally sufficient, so Plaintiff's argument for a full-blown post-termination hearing to cure deficiencies earlier in the process is rather weak.

The necessity of cross-examination in a post-termination hearing is dependent on the facts and circumstances of a particular case.  McClure v. Independent School District No. 16, 228 F.3d 1205, 1211 (10th Cir. 2000); West v. Grand County, 967 F.2d 362, 369 (1992). The United States Supreme **Court pointed out this flexibility by opining, "There is this much play in the joints of the Due Process Clause, and we stop short of imposing a m**ore demanding rule with respect to witnesses and documents."  Wolff v. McDonnell, 418 U.S. at 567 (1974) (inmates

have no constitutional right to cross-examination in prison disciplinary hearings).  Confrontation

and cross-examination "are not rights universally applicable to all hearings."  Wolff, 418 U.S. at

567.

The Tenth Circuit construed the long-established Wolff rule in West v. Grand County, 967

F.2d 362, 369 (1992), a case in which a public employee was terminated.  The West employer let

the plaintiff go, asserting a reduction in force.  The plaintiff alleged this reduction was a sham.

She attended a post-termination hearing with an attorney and presented testimony regarding the

subterfuge, but was denied the opportunity to cross-examine.  The court found this to be

constitutionally sufficient.  "[W]**hether the Due Process Clause requires that the terminated**

**employee be offered the right to cross-examine or confront witnesses depends upon the**

**significance and nature of the factual disputes at issue**."  West, 967 F.2d at 369.  For example,

when a law enforcement officer was fired after admitting that he made ticket-fixing phone calls

and subsequently received a gift from the beneficiary of the phone calls, the law enforcement

officer was not entitled to cross-examine witnesses even though the officer did not admit that he

obtained the gift in exchange for fixing the tickets.  The terminated officer did not show that

"cross-examination would have changed the board's inference that these two admitted facts were

reasonably related.   Accordingly, we conclude that his hearing did not lack due process."  Meder

v. City of Oklahoma, 869 F.2d 553, 555 (10th Cir. 1989).  Accord Sutherland v. Tooele City

Corporation, 91 Fed.Appx. 632, (10th Cir. 2004), 2004 WL 198306 (due process afforded even

when employee not allowed to confront witnesses against him).

In this case, Plaintiff admitted to some charges against her, disputed some charges, and did

not respond to certain parts of other charges.  Def. Ex. 4.  Plaintiff did not submit any

documentation to the Village Council, let alone any documentation pointing to factual disputes

that could be better illuminated by cross-examination than by the record of the pre-termination

hearing.  Plaintiff did not request an opportunity to cross-examine witnesses, nor did she provide

any materials that would allow the Village Administrator or Council to infer that cross-

examination is what she desired.  Plaintiff did not identify witnesses she intended to cross-

examine.  As in Meder, Plaintiff has not explained how cross-examination would have changed

the Council's view.

       In some situations, courts have found cross-examination a necessary component of

procedural due process.  In McClure, the Tenth Circuit ruled that a school district employee had a

right under the Due Process clause to cross-examine the witnesses against her in termination

proceedings.  The board making the final decision regarding McClure's employment based its

decision on the affidavits of various witnesses against her.  "The affidavits in general made broad,

conclusory allegations stating that the affiants had smelled liquor on Mrs. McClure's breath at

school on unspecified occasions, that she smoked cigarettes in her office after 3:00 p.m. on school

days and occasionally left school grounds with other teachers to smoke elsewhere, that she used

vulgar language in front of school staff, and that her management style was one of fear and

intimidation."  McClure at 1209-1210.  These he said-she said allegations used to justify an

employee's termination are precisely the situations for which cross-examination is best suited.

The facts in this case are different.  In affirming Village Administrator Harrison, the Village

Council did not rely on the testimony or affidavits of witnesses who alleged character flaws or

25

interpersonal conflict.  Village Administrator Harrison made very factually specific, verifiable
accusations regarding Plaintiff's job performance.  Under these circumstances cross-examination
of witnesses is less important than it was in McClure.

In considering the second prong of Mathews, "the risk of erroneous deprivation of such
interest through the procedures used," I note that the risk of error was not great because the
Village Council was relying on a record that contains Plaintiff's side of the story instead of on
unsubstantiated allegations.  The next part of the Mathews second prong is, "the probable value, if
any, of additional or substitute procedural safeguards."   In regard to this factor, Plaintiff relies on
Workman v. Jordan, 32 F.3d, 475, 480 (10th Cir. 1994) which states, **"A 'full posttermination
hearing' is understood to include the right to representation by an attorney and the right to
cross-examine adverse witnesses."**  The McClure court pointed out that this statement in
Workman was dicta.  McClure v. Independent School District No. 16, 228 F.3d 1205, 1211 (10th
Cir. 2000).   Also, the Workman v. Jordan opinion seems to have unwittingly cited a dissent as
authority for the language quoted above.  The statement in Workman v. Jordan would seem not
to be binding authority in this case.  It appears to be contrary to other cases in this circuit, such as
West v. Grand County, 967 F.2d 362 (1992), that employ a facts and circumstances test to
determine if cross-examination is constitutionally required.

In this case there is a question whether the Defendants had an obligation to notify Plaintiff
of a right to cross-examine witnesses to assure procedural due process.  Village Administrator
Harrison notified Plaintiff that the Village Grievance Policy applied to his decision to terminate
her. Def. Ex. 5.  The Village Code is silent about the right to call or cross-examine witnesses in

26

pre-termination or post-termination procedures.  Pl. Ex. 1.  Plaintiff's attorney made a request for

more process.  Pl. Ex. 1.  Village counsel responded by asking Plaintiff's attorney to be more

specific.  Pl. Ex. 2.  Instead of responding directly to Village Counsel's request to articulate what

more process Plaintiff desired, Plaintiff's counsel later wrote, "we decline to ratify this proceeding

by accepting your offer to provide additional written material for the Council's consideration. . ."

Pl. Ex. 5.  In this situation, it is not clear that there was a constitutional deficiency.

**Plaintiff did not name any witnesses, adverse or** friendly, whom she might have cross-

examined in order to refute the Village Administrator's findings or to support her own case.  In

the pre-termination hearing with the Village Administrator, Plaintiff did mention the name of

former Village Administrator Don Lusk who "stands ready to attest" to the facts surrounding

ground for termination number 2 (tardy filings and submissions resulting in interest and penalties).

Def. Ex. 4.  Plaintiff states that Former Village Administrator Lusk could testify that Plaintiff

received a verbal reprimand for ground for termination number 2, Plaintiff was told to make sure

it never happened again, and Plaintiff complied.  Def. Ex. 4.  Nothing in the record suggests that

these facts are in dispute, so even if Plaintiff had requested remand for a further hearing and had

called former Village Administrator Lusk as a witness, there is no evidence that his testimony

would have had a significant consequence.  But in viewing the facts in a light most favorable to

Plaintiff, I assume she could have elicited illuminating cross-examination or produced supporting

witnesses besides former Village Administrator Don Lusk if the Village Code procedures had

given Plaintiff that opportunity.

The third factor under *Mathews* to be considered in the balancing of interests involves "the

Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  424 U.S. 319, 335 (1976). The record in this case suggests that the government's interest would not be severely affected and the government would not be substantially burdened by language in the Village code that would allow, explicitly, the right to have counsel present and to cross-examine witnesses.

It is highly questionable whether the Plaintiff has made an adequate showing of a violation of her constitutional right to procedural due process under the *Mathews v. Eldridge* balancing test.  On the other hand, it is crystal clear from the record in this case that the individual Defendants would not be expected to understand that the Plaintiff's claimed constitutional right to have the Village code state expressly that she could have counsel at a hearing and could cross-examine witnesses had been "clearly established."  Just a few months ago, the Court of Appeals for the Tenth Circuit spoke on this point in *Lawrence v. Reed*, 406 F.3d 1224, 1233 (10th Cir. 2005) as follows:

> And although the Court has crafted a nice balancing test to determine what such a hearing should look like, we need not consider that test here because the Rawlins derelict vehicle ordinance provides no hearing whatsoever.  This is precisely why Mr. Reed should have known that the ordinance was unconstitutional.  Had the derelict vehicle ordinance provided some form of pre- or post-deprivation hearing – even a constitutionally inadequate one – we would not necessarily expect a reasonable officer to know that it was unconstitutional.  For once the ordinance provides a hearing, its constitutionality turns on a court's resolution of the *Mathews* balancing test, which, in the absence of case law directly on point, is not something we would require officers to predict.

Hence, without making a specific ruling on whether Plaintiff did adequately show the violation of a constitutional right, I conclude that the individual Defendants are entitled to

qualified immunity because they would not be expected to have known that the constitutional

right Plaintiff claims was violated had been "clearly established" at the time of the alleged

violation.

### B.      Equal Protection (Count II)

Plaintiff asserts that Defendants violated her constitutional right to equal protection of the

laws by terminating her employment in an "unreasonable, arbitrary and capricious manner."  Am.

Compl. ¶ 33.  This claim is reviewed under a Rule 12(b)(6) motion to dismiss standard.

Although the defense of qualified immunity is typically raised in a motion for summary judgment,

a defendant may also assert qualified immunity in a motion to dismiss.  See Peterson v. Jensen,

371 F.3d 1199, 1201 (10th Cir. 2004).  However, raising a qualified immunity defense in a Rule

12(b)(6) motion subjects the defendant to a more challenging standard of review than would

apply on summary judgment, because a Rule 12(b)(6) motion "is viewed with disfavor, and is

rarely granted."  Peterson v. Jensen at 1201 (citing Lone Star Indus., Inc. v. Horman Family

Trust, 960 F.2d 917, 920 (10th Cir. 1992)).

Here it is appropriate to grant the motion to dismiss the equal protection claim because

Plaintiff has not adequately alleged a constitutional violation.  Village of Willowbrook v. Olech,

528 U.S. 562, 564 (2000) and Tonkovich v. Kansas Board of Regents, 159 F.3d 504, 533 (10th

Cir. 1999) require that a plaintiff allege that a defendant intentionally and without a rational basis

treated plaintiff differently than others similarly situated.  Plaintiff has not alleged facts

suggesting she was treated differently than others or somehow singled out, nor has Plaintiff

asserted that discovery could yield evidence that she was treated differently than others similarly

situated.  Instead, Plaintiff argues that the court should defer ruling on this claim.  Because

Plaintiff has failed to state a claim for denial of equal protection, Defendants are entitled to

qualified immunity under Rule 12(b)(6) on Plaintiff's Count II equal protection claim.

### C.    Substantive Due Process (Count III)

Plaintiff also asserts a deprivation of substantive due process rights, claiming that

Defendants fired Plaintiff on arbitrary and unreasonable grounds.  This claim is judged under the

Rule 56 summary judgment standard because I have gone beyond the Amended Complaint and

reviewed the factual record.  The Tenth Circuit has stated the following with respect to

substantive due process:

> An arbitrary deprivation of an individual's property right can violate the substantive
> component of the Due Process clause of the Fourteenth Amendment.  Any substantive
> due process claim must represent 'more than an ordinary tort to be actionable under
> §1983,' and must 'shock the conscience.'  To reach that level, the government action
> must be deliberate, rather than merely negligent.

Clark v. City of Draper, 168 F.3d 1185, 1190 (10th Cir. 1999) (citations omitted).  To satisfy the

"shock the conscience" standard, the "plaintiff must do more than show that the government

actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing government

power."  Tonkovich v. Kansas Bd. of Regents, 159 F.3d 504, 528 (10th Cir. 1998) (quoting

Uhlrig v. Harder, 64 F.3d 567, 574 (10th Cir. 1995)).  The plaintiff must instead "demonstrate a

degree of outrageousness and a magnitude of potential or actual harm that is truly conscience

shocking."  Uhlrig, 64 F.3d at 574.  Plaintiff argues that it shocks the conscience that even after

Plaintiff informed the Village of its due process problems, it did not correct them.  Plaintiff also

asserts that it shocks the conscience because the Village is ignoring legal precedent.

30

In light of the discussion on procedural due process, it is evident that Plaintiff cannot show that Defendants' manner of termination constituted outrageousness. There is nothing in the record that would shock the conscience. The Village enacted a personnel ordinance that provides for a pre-termination hearing on the record, and an appeal to the Village Council. Plaintiff concedes that, "Both the Village and the Plaintiff were expected to and did conform to the procedures outlined in the Ordinance." Am. Compl. ¶12. This constitutes an admission that the Village complied with its ordinance, which undermines a claim that Defendants acted arbitrarily. Therefore, Plaintiff has not shown a constitutional violation of her substantive due process rights, and Defendants are entitled to qualified immunity on this claim.

### D.   Liberty Interest in Reputation (Count IV)

Plaintiff claims that the individual Defendants deprived her of a liberty interest in her reputation and she now requests a name clearing hearing. As the Amended Complaint alleges and I assume to be true for purposes of the motion to dismiss, an unnamed individual Defendant told an unidentified Taos County Commissioner that the basis for Plaintiff's termination was embezzlement. Am. Compl. ¶ 38. Plaintiff also alleges that similar statements were made to prospective employers by one or more of the Defendants. Am. Compl. ¶¶ 38 and 39. Plaintiff did not allege that she is unemployed as a result of these comments.

Defendants move for qualified immunity on this claim, thus triggering the requirement that Plaintiff show a constitutional violation and a clearly established right. Plaintiff argues that the individual Defendants were on notice that stigmatizing Plaintiff in connection with her termination would be a constitutional violation, but Plaintiff cites no authority for this proposition. Plaintiff cites no authority in her response brief to support her theory that the

individual Defendants violated her liberty interest.

A constitutional "liberty" interest is difficult to define.  Paul v. Davis, 424 U.S. 693, 710
(1976).  In general, interests have attained "constitutional status by virtue of the fact that they
have been initially recognized and protected by state law. . ."  Paul v. Davis, 424 U.S. at 710.
Damages to reputation do not constitute a deprivation of liberty interest unless coupled with
another right "vouchsafed" by the state and protected by the Fourteenth Amendment.  Paul v.
Davis, 424 U.S. 693, 712 (1976).   In order to state a claim for deprivation of liberty interest in
reputation, "the plaintiff must adequately allege specific, direct evidence of illicit intent -- as
opposed to merely circumstantial evidence of bad intent -- in order to defeat the defendant's
motion to dismiss or motion for summary judgment asserting qualified immunity.  Siegert v
Gilley, 500 U.S. 226, 231 (1991).  The Siegert plaintiff alleged that due to an employer's letter,
he could not obtain a specific employment position he sought, and in general experienced trouble
in finding a comparable position.  Siegert, 500 U.S. at 232.  The United Supreme Court held that
the plaintiff had not alleged a constitutional deprivation, 500 U.S. at 233, and noted that state
defamation law, not constitutional law, is the more appropriate vehicle for pursuing such a claim.
500 U.S. at 234.  For the deprivation of liberty interest claim to be actionable, a public employee
involved in a termination proceeding would need to allege more than stigma.  Melton v. City of
Oklahoma City, 928 F.2d 920 (10th Cir. 1991).  **"[S]tigmatization without a punitive action
against a public employee will not violate a protected liberty interest."**  Melton, **928 F.2d at 930
(citing** Paul v. Davis, **424 U.S. 693, 710 (1976)).**  The Melton court continued, **"a stigmatizing
statement must be the basis of punitive action taken by a public entity against one of its**

employees." 928 F.2d at 930.  A firing, and then a statement about that firing, do not implicate a liberty interest.  See Melton, 928 F.2d at 927.

        Plaintiff's Amended Complaint is deficient in several respects.  Plaintiff has not alleged damage to reputation infringed upon another legally protected right as required by Paul v. Davis, 424 U.S. 712.  Plaintiff has not even alleged bad intent, let alone direct evidence of illicit intent, according to Siegert v. Gilley, 500 U.S. at 231.  Lastly, Plaintiff has not alleged that the stigmatizing statement was the basis for punitive action taken by the public entity as in Melton, 928 F.2d at 930.  In fact, the alleged stigmatizing statement was made after, not before Plaintiff's termination, so the statement could not have been the basis for the punitive action against her.

        Overall, Plaintiff has not shown she has a constitutional liberty interest in reputation as it affects prospective employment, rather than a state tort defamation claim.  While "continued employment" is a constitutionally protected property interest in some circumstances, prospective employment with another employer is not.  See Workman v. Jordan, 32 F.3d at 480 (finding plaintiff must show that a liberty interest exists before applying four-part test for deprivation of interest); see also Sandoval v. City of Boulder, 388 F.3d 1312 (10th Cir. 2004) (in order to establish entitlement to name clearing hearing, plaintiff must show government infringed liberty interest as it affects "protected property interest in continued employment").  Additionally, though not fatal to Plaintiff's claim, she has not alleged that she requested and was denied a name-clearing hearing.  The burden is on Plaintiff to make this showing.  Workman v. Jordan, 32 F.3d at 480.

        Because Plaintiff has not alleged a constitutional violation of deprivation of liberty

interest in reputation as required by the Supreme Court and the law in this circuit, Plaintiff has failed to state a claim upon which relief can be granted.  Qualified immunity is appropriate for the individual Defendants and Plaintiff's claims against them will be dismissed.


THEREFORE, IT IS ORDERED that Defendants' Motion to Dismiss or for Summary Judgment Based on Qualified Immunity  (Doc. No. 14) is GRANTED.

IT IS FURTHER ORDERED that

1.      Count II, Plaintiff's claim of violation of equal protection, is dismissed with prejudice for failure to state a valid claim;

2.      Count IV, Plaintiff's claim of deprivation of liberty interest in reputation, is dismissed with prejudice for failure to state a valid claim; and

3.      A separate Partial Summary Judgment will be entered contemporaneously with this Memorandum Opinion and Order dismissing Count I, Plaintiff's claim of deprivation of procedural due process, and Count III, Plaintiff's claim of deprivation of substantive due process.

_____
SENIOR UNITED STATES DISTRICT JUDGE